**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PURCELL BRONSON,

    Plaintiff,

    v.

DAVID G. WHITE, DDS; ROBERT J.
MARSH; and DAVID E. PATTON,

    Defendants.

NO. 1:05-CV-2150

(JUDGE CAPUTO)

(MAGISTRATE JUDGE SMYSER)

## MEMORANDUM

Presently before the Court is Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. 66), and Plaintiff's Objections to the August 10, 2007 Report and Recommendation. (Doc. 67.)  The Magistrate Judge recommended that the Court grant Defendants' motion for summary judgment and decline to exercise jurisdiction over the Plaintiff's state law claims.  For the reasons set forth below, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation will be overruled, the Court will adopt the Report and Recommendation, and grant Defendants' motion for summary judgment. (Doc. 47.)

## BACKGROUND

Plaintiff Purcell Bronson is a prisoner incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill").  (Defs.' Statement of Undisputed Material Facts

in Supp. of Mot. for Summ. J. ¶ 1, Doc. 50.)[1]  From June 23, 2004 until October 13, 2006,

Plaintiff was housed in the Special Management Unit ("SMU") at SCI-Camp Hill.  (*Id.* ¶

15.)  Since October 13, 2006, Plaintiff has been housed in the Restricted Housing United

("RHU") at SCI-Camp Hill. (*Id.* ¶ 3.)  The Defendants are David G. White, a dentist

employed by the Pennsylvania Department of Corrections at SCI-Camp Hill; Robert J.

Marsh, a Unit Manager employed at the SMU at SCI-Camp Hill; and David E. Patton, a

Deputy Superintendent for Centralized Services employed at SCI-Camp Hill.  (*Id.* ¶ 2.)

On June 23, 2004, Plaintiff was transferred from the State Correctional Institution

at Fayette ("SCI-Fayette") to the SMU at SCI-Camp Hill.  (*Id.* ¶ 3.)  Prior to being housed

at SCI-Fayette, the Plaintiff was housed at the State Correctional Institute at Pittsburgh

("SCI-Pittsburgh").  While housed at SCI-Pittsburgh, Plaintiff saw a dentist approximately

twice a year, and received a cleaning at least once a year.  (*Id.*)  Plaintiff periodically

reveived x-rays of his teeth at SCI-Pittsburgh.  (*Id.* ¶ 4.)   While at SCI-Pittsburgh, the

dental staff told the Plaintiff that his teeth were going bad due to improper care.  (*Id.* ¶ 3.)

The dental staff also told him that he should floss and brush his teeth more often.  (*Id.*)

However, Plaintiff was not permitted to have dental floss while in the RHU at SCI-

Pittsburgh.  (*Id.*)  While at SCI-Pittsburgh, Plaintiff did not have any cavities.  (*Id.* ¶ 4.)

Plaintiff was only housed at SCI-Fayette for six (6) months.  (*Id.*)  While Plaintiff

was there, he was given a toothbrush, which he used.  (*Id.*)  He was not permitted to

have dental floss at SCI-Fayette.  (*Id.*)

_____

[1]Although Plaintiff has denied certain paragraphs of the Defendants' Statement of Material Undisputed Facts, he has not pointed to record evidence to support such denials. Therefore, pursuant to Local Rule 56.1, those material facts are deemed to be admitted.

When Plaintiff arrived at the SMU in SCI-Camp Hill, he received a toothbrush with a short handle.  (*Id.* ¶ 5.)  Plaintiff used the toothbrush approximately twice per day, but was not permitted to have dental floss.  (*Id.*)

Defendant White provides dental care to inmates at SCI-Camp Hill in his capacity as the dentist in that facility.  (*Id.* ¶ 15.)  As part of his duties, Defendant White is familiar with Plaintiff Bronson, and treated Plaintiff during his time in the SMU at SCI-Camp Hill from June 23, 2004 until October 13, 2006. (*Id.* ¶ 15.)  Defendant White treated Plaintiff numerous times in 2005 and 2006.  (*Id.* ¶ 16.)

On February 16, 2005, Defendant White treated Plaintiff and diagnosed him with a periodontal abscess and generalized moderate periodontis.  (*Id.* ¶ 17.)  Periodontal disease affects the area surrounding the teeth, including the gums.  (*Id.*)  The gums become inflamed due to a buildup of plaque.  (*Id.*)  This is usually the result of poor dental hygiene, such as lack of regular brushing and flossing.  (*Id.*)  Defendant White prescribed penicillin and advised Plaintiff to brush and floss when floss was available to him.  (*Id.*)

On subsequent visits, Defendant White noted that the swelling in Plaintiff's gums had subsided after improved dental hygiene by the Plaintiff.  (*Id.* ¶ 18.)  On December 9, 2005, Defendant White saw Plaintiff, at which time the Plaintiff requested dentures.  (*Id.* ¶ 19.)  Defendant White advised the Plaintiff that he was not eligible for dentures under the Department of Corrections policy. (*Id.*)   Under the Department's Access to Health Care Procedures Manual, inmates are eligible for dentures based upon the number and type of missing teeth. (*Id.*)   Plaintiff has two missing teeth on his upper right side and a missing

wisdom tooth on his lower right side, which Defendant White stated did not qualify him for dentures.  (*Id.*)  The dentist at SCI-Pittsburgh told Plaintiff the same thing.  (*Id.* ¶ 11.) Defendant White further advised Plaintiff that, in his experience, dentures tend to worsen periodontal disease, which Plaintiff had been diagnosed with several months earlier.  (*Id.* ¶ 18.)

The SMU is a specialized housing unit within SCI-Camp Hill which houses disruptive and violent inmates.  (*Id.* ¶ 25.)  There are five phases in the SMU.  (*Id.* ¶ 26.) Each inmate begins his tenure in the SMU at the most restrictive phase, but can progress to a less restrictive phase of housing based upon behavior.  (*Id.*)  As inmates progress through the phases, their access to privileges and services is increased.  (*Id.*)

All SMU inmates are provided with a modified toothbrush for dental hygiene. (*Id.* ¶ 27.)  However, until recently, all SMU inmates were denied the use of dental floss for security purposes.  (*Id.*)  It was determined at that time that dental floss could be used to fashion weapons, garrote staff and other inmates, and interfere with locking mechanisms. (*Id.*)  As of approximately January 2007, SMU inmates have been permitted to have short dental floss strips due to a revision in Department policy.  (*Id.*)

As the Unit Manger assigned to the SMU at SCI-Camp Hill during the relevant time period, Defendant Marsh was responsible for unit security and treatment programs within the SMU.  (*Id.* ¶ 25.)  On or about March 20, 2005, Plaintiff submitted a request to Defendant Marsh to be permitted dental floss in his cell.  (*Id.* ¶ 29.)  On April 13, 2005, Marsh responded that dental floss was a security concern, and therefore his request would be denied.  (*Id.*)  Defendant Marsh does not recall any conversations with Plaintiff

on this matter.  (*Id.*)  This was the extent of Defendant Marsh's interaction with the Plaintiff.

While working as Deputy Superintendent for Centralized Services at SCI-Camp Hill, Defendant Patton had managerial responsibilities for certain services at the institution, including medical services.  (*Id.* ¶ 33.)  On or about July 7, 2005, the Plaintiff wrote to Defendant Patton seeking permission to use dental floss in the SMU.  (*Id.* ¶ 34.)  Defendant Patton also declined this request, stating "I do not approve dental items for inmates.  Dental floss is not on the approved items for the SMU.  I suggest that you improve your behavior to the point that you can be released to general population."  (*Id.*)  This was the extent of Defendant Patton's interaction with the Plaintiff.  (*Id.*)

Defendant Patton's understanding was that dental floss was not permitted to SMU inmates at that time for security reasons, as the floss could be used as a weapon, or in malfunctioning electronic components such as locks on the cell doors. (*Id.* ¶ 35.)

On October 21, 2005, Plaintiff filed his Complaint, claiming violations of the Eighth Amendment of the United States Constitution and state law.  (Doc. 1.)  On January 20, 2006, the Defendants filed a motion to dismiss the Complaint.  (Doc. 16.)  Magistrate Judge Smyser issued a Report and Recommendation (Doc. 20) on April 25, 2006, in which he recommended denying the Defendants' motion to dismiss.  By Order dated August 2, 2006, the Court adopted the April 25, 2006 Report and Recommendation, thereby denying Defendants' motion.

Defendants thereafter filed an Answer to the Complaint (Doc. 28) and a motion for summary judgment. (Doc. 47.)  On August 10, 2007, Magistrate Judge Smyser issued

the present Report and Recommendation ("the R&R") (Doc. 66), recommending that the Defendants' motion for summary judgment be granted.  Plaintiff filed an objection to the R&R on August 30, 2007. (Doc. 67.)   Defendants did not file an objection to the R&R.

The summary judgment motion is fully briefed and ripe for disposition.  The Report and Recommendation is likewise ripe for disposition.

## LEGAL STANDARDS

### I.      Review of a Magistrate Judge's Report and Recommendation

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very least, the Court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

6

## II.   Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most

favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

### I.      Eighth Amendment Claims

The Supreme Court has held that the government has an "obligation to provide medical care for those whom it is punishing by incarceration."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  For Plaintiff to establish an Eighth Amendment violation, he must establish that the Defendants acted with deliberate indifference to his serious medical needs.  *Id.*  Plaintiff has alleged that his Eighth Amendment rights were violated based upon his failure to receive dentures as part of his dental treatment.  He has further alleged that his Eighth Amendment rights were violated when his request for dental floss was rejected by prison officials at the SMU.

8

A.      Request for Dentures

In order to establish an Eighth Amendment violation, the Plaintiff must first demonstrate evidence that the Defendants acted with deliberate indifference.  Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104-05.  Mere negligence does not violate the Eighth Amendment.  *Id.* at 106.  Even an act constituting medical malpractice may be insufficient to establish an Eighth Amendment violation.  *Id.*  If the prison medical staff relating to the exercise of professional judgment, even if they constitute medical malpractice, are not necessarily violative of the Eighth Amendment.  *Id.* at 107.

"[M]ere disagreement as to the proper medical treatment" is likewise insufficient to establish an Eighth Amendment violation.  *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  Rather, grossly negligent behavior constitutes deliberate indifference, as can a doctor's choice for "'an easier and less efficacious treatment' of the inmate's condition."  *Id*. at 347 (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).   The Third Circuit has specifically found deliberate indifference to exist when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

In this case, Plaintiff has merely alleged a difference in personal opinion as to the

9

proper treatment regarding his missing teeth.  This fails to establish deliberate indifference.  In *James v. Pennsylvania Dep't of Corr.*, 230 Fed. App'x 195 (3d Cir. 2007), an inmate at a Pennsylvania corrections institute brought a § 1983 claim regarding the dental care he received for an abscessed tooth.  The Appellant inmate's complaint alleged that extraction of the abscessed tooth should not have been employed, and that the dentist should have used an alternative method. *Id.* at 196.  The dentist noted that antibiotics were not a viable alternative, and that the only possible procedure to save the tooth would have been a root canal, but noted that the particular type of root canal necessary was not permitted by the Department of Corrections policy. *Id.* 196-97.  The Third Circuit Court of Appeals upheld the dismissal of this complaint, noting that "[the appellant's] preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts." *Id.* at 197.

In this case, Plaintiff has demonstrated only that he has a preference for dentures, and not that he was treated with deliberate indifference when he failed to receive them. As in *James*, there is no indication that Defendant White acted with an ulterior motive beyond routine patient care within the confines of the Department of Corrections' policies regarding dentures. *Id.* at 198.  Although Plaintiff disagrees with Defendant White about the proper course of treatment, such disagreement is not tantamount to a constitutional violation.

Plaintiff has similarly failed to demonstrate evidence regarding the deliberate indifference of Defendants Marsh and Patton.  Non-medical prison officials cannot be charged with deliberate indifference to a serious medical need by a prisoner being

treated by medical personnel absent "'reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner.'"  *Id*. (quoting *Spruill*

*v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).  As Plaintiff was not being mistreated,

Defendants cannot be charged with deliberate indifference on this claim.

Therefore, no reasonable juror could find that Defendants acted with deliberate

indifference to Plaintiff's dental needs with respect to his request for dentures.  As

Plaintiff has failed to demonstrate a deliberate indifference on the part of the Defendants,

the question of whether there was a serious medical need will not be addressed.

B.     Prison Regulation Regarding Dental Floss

Plaintiff further alleges that his Eighth Amendment rights were violated by the

failure of prison officials to provide him with dental floss.  The prison officials refused to

provide him with dental floss based upon a security regulation in force at the time of the

request.

In *Turner v. Safley*, 482 U.S. 78, 107 (1987), the Court held that "a prison

regulation impinges on inmates' constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests."  In determining reasonableness,

the court should look to: (1) the rational relationship between the regulation and the

government interest put forth to justify it; (2) the existence of alternative means to

exercise the asserted right; (3) the impact on prison resources of accommodating the

asserted right; and (4) the existence of "ready alternatives' to accommodate the asserted

right at "de minimus" cost to valid penological interests.  *Id*.

The first *Turner* factor requires the Court to look at the rational relationship

between the banning of dental floss and the government's justification based upon

11

security interests.  There is clearly a rational relationship between the banning of dental

floss and security.  The government has alleged that dental floss could be used to

fashion weapons or pick locks.  An inmate in the SMU is placed in that housing based

upon violent and disruptive tendencies.  Therefore, the government has an interest in

banning instruments in the SMU that could be used in a violent manner.

The second *Turner* factor requires the Court to determine if the prison has

provided inmates with alternative avenues.  In this case, the Plaintiff was supplied with a

modified toothbrush for his dental needs.  The Plaintiff was also provided with access to

a dentist when necessary.  Therefore, the Plaintiff did have alternative means of dental

care available to him, although he was not permitted dental floss.

Under the third *Turner* factor, the Court must consider how accommodating the

Plaintiff would impact guards and other inmates.  If the Plaintiff were given dental floss,

this could have a severe impact on the guards and other inmates.  Other inmates could

try to steal or borrow the floss to use as a weapon or to pick locks.  Because of this

possibility, the guards would have to be on constant vigilance for the use of the floss in

this manner.  Even permitting one person to have dental floss could lead to a security

concern for the rest of the inmates and the guards.

The final factor is whether there is an absence of "ready alternatives" to the

regulation.  At this time, the inmates are now permitted to have dental floss in short strips,

which is a ready alternative to long strings of floss.  Although such an alternative

presently exists, this alternative was not available at the time the Plaintiff requested

dental floss.

In balancing the four factors of the *Turner* test, the Plaintiff has failed to show that

the ban on dental floss was not reasonably related to legitimate penological interests.

Inmates were provided other alternative measures for their dental hygiene.  Furthermore,

there were legitimate security concerns regarding the use of traditional dental floss as a

weapon or means to disrupt the prison locks.  *See Burke v. Webb*, No. Civ. A. 707-CV-

00017, 2007 WL 419565 (W.D. Va. Feb. 1, 2007) (holding that "[i]n light of the potential

security threat the presence of dental floss presents to institutional staff and other

inmates . . . the prison's policy [is reasonable].").  Although short strips of dental floss are

now available to inmates at the SMU, this alone does not outweigh all other factors in

determining whether the ban on dental floss was reasonably related to legitimate

penological interests.

Furthermore, the Plaintiff has failed to demonstrate evidence that the failure to

provide dental floss was due to deliberate indifference to a serious medical need.

First, Plaintiff has demonstrated no facts regarding Defendant White's role in the refusal

to provide dental floss.  Defendant White's role encompassed diagnosing and treating the

Plaintiff, and no evidence is demonstrated that Defendant White ever had any role in the

provision of dental floss.

Plaintiff has also failed to demonstrate any evidence regarding the deliberate

indifference of Defendants Marsh and Patton.  Non-medical personnel cannot be held to

be deliberately indifferently merely because they fail to respond to the complaints of an

inmate who is already being treated by prison medical staff.  *Gusman v. Bureau of

Prisons*, 231 Fed. App'x 179, 181 n.1 (3d Cir. 2007).  But, non-medical prison officials

can be charged with deliberate indifference to a serious medical need by a prisoner being

treated by medical personnel if there is "'reason to believe (or actual knowledge) that

prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *James.*, 230 Fed. App'x at 198 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Furthermore, once a prison grievance examiner becomes aware of the treatment, the Eighth Amendment only requires that the official "'review[ ] . . . [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (citing *Spruill*, 372 F.3d at 236)).  Therefore, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing the prisoner is in capable hands." *Spruill*, 372 F.2d at 236.

        In this case, Defendants Marsh and Patton received requests from Plaintiff for dental floss based upon his dental treatment.  Plaintiff's first request to Defendant Marsh stated that "the dentist has recommended that I use dental floss to properly clean my teeth or I will end up losing my teeth." (Doc. 48 at 31.)  Defendant Patton then received another request, which asked for dental floss based on "medical grounds."  (Doc. 48 at 32.)  These requests were both denied.  However, these requests were not denied based upon deliberate indifference to the serious medical needs of the Plaintiff.  Rather, these requests were denied based upon the security risk to the other inmates and staff in the SMU.  *See Perez-Gutierrez v. Lampert*, No. Civ. 00-1689-HA, 2002 WL 31689536, at *9 (D. Or. Sept. 30, 2002) (finding that there was no deliberate indifference to the serious medical needs of an inmate when a prison official removed excess dental floss from a cell based upon security interests of the facility).

        There is no evidence provided that dental floss was ever ordered by any dentist as

a medical necessity.  *See id.* at *10 (noting that the plaintiff was authorized to receive dental floss pursuant to a physician's order).  Furthermore, Defendant White's report of December 9, 2005 notes that "[Plaintiff] was advised that he needs to brush up and down and floss when the floss is available to him to help slow down the periodontal disease." (Doc. 48 at 50.)  Defendant White made no notation that dental floss was to be a requirement for Plaintiff's dental needs - rather, he should floss "when the floss is available to him."

The Plaintiff did receive treatment from Dr. White.  The Defendants were justified in believing that the Plaintiff was in capable hands.  They had no order from Defendant White to permit Plaintiff to have special access to dental floss.  Therefore, the Defendants were justified in their actions.

For these reasons, summary judgment will be granted for Defendants White, Patton, and Marsh on the Eighth Amendment claims.

**II.    State Law Claims**

In his Complaint, the Plaintiff alleges that his claims are also based on state law. The Defendants have not addressed any state law claims.  The Court agrees with Magistrate Judge Smyser that, as the Court will grant summary judgment on all of the Plaintiff's federal claims, the Court will decline to exercise supplemental jurisdiction over the Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the reasons stated above, Magistrate Judge J. Andrew Smyser's Report and

Recommendation will be adopted.  Plaintiff's Objections will be overruled.  Defendants'

motion for summary judgment will be granted and the Court will decline to exercise

supplemental jurisdiction over the Plaintiff's state law claims.

      An appropriate Order follows.


October 15, 2007                    /s/ A. Richard Caputo
Date                                A. Richard Caputo
                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PURCELL BRONSON,

      Plaintiff,

      v.

DAVID G. WHITE, DDS; ROBERT J.
MARSH; and DAVID E. PATTON,

      Defendants.

NO. 1:05-CV-2150

(JUDGE CAPUTO)

(MAGISTRATE JUDGE SMYSER)

**ORDER**

    **NOW**, this 15th day of October, 2007, upon review of Magistrate Judge J.
Andrew Smyser's Report and Recommendation (Doc. 66), **IT IS HEREBY ORDERED**
that:

    1.    The Report and Recommendation (Doc. 66) is **ADOPTED**.

    2.    Defendants' motion for summary judgment (Doc. 47) is **GRANTED**.

    3.    The Clerk of the Court shall mark this case **CLOSED.**

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge